We will hear argument first this morning in case 19-292 Torres v. Madrid. Ms. Corcoran? Mr. Chief Justice, and may it please the Court, in the early morning, respondents approached Roxanne Torres in her car and attempted to open the door without announcing they were police officers. Believing she was being carjacked, Ms. Torres drove away, and as she did, respondents fired 13 shots at her. Two of the bullets hit her in the back. In rejecting Ms. Torres' claim that the shooting violated the Fourth Amendment, the Court of Appeals did not consider whether respondents' use of deadly force was reasonable. By the Court's reasoning, respondents could have shot Ms. Torres without any provocation, and it would not have violated the Fourth Amendment because instead of remaining in the parking lot, she drove herself to the hospital. The Court of Appeals' decision conflicts with the ordinary meaning of the word seizure at the time of the Fourth Amendment's adoption, and it conflicts with this Court's that when a government officer inflicts physical force on a person with the intent to restrain them, that person is seized within the meaning of the Fourth Amendment, regardless of whether that restraint is successful. As Hidari explains, this is because the Fourth Amendment must protect today what it protected when it was adopted, and in determining what the Fourth Amendment protected at the founding, this Court has always looked to the common law definitions of search and seizure, and with respect to seizures of persons, the common law of arrest. The Court explained in Atwater that an examination of the common law of arrest tells us what the founding generation would have understood to be an unreasonable seizure of a person. The common law of arrest leaves no doubt that when respondents' bullets entered Ms. Torres' back, she was seized within the original meaning of the Fourth Amendment. Several centuries' worth of cases and commentary, both before and after the founding, uniformly recognized that physical force intended to restrain is an arrest, even if the subject evades capture. Ms. Corcoran, what if the police had shot out the tires of her car, but she was able to continue driving on? There were those self-sealing tires that you can get. Would that be a seizure? No, it would not, because there would be no application of physical force to her body. Well, I thought there was an element of intent to hamper movement to your analysis. So, what if they were aiming at the wheels or tires, but hit her while aiming somewhere else? Would that be a seizure? Yes. So, they have shot at her tires, but unintentionally hit her? Yes. Yes, understood. So, under those circumstances, the answer would be yes, because they have physically impacted her through means intentionally applied. That's the test from Brouwer. But they're applied to the car, really, not to her. It was only inadvertent that they struck her. I thought there was a requirement of hampering movement or laying of hands, for that matter. You wouldn't have that. Or would you? Are you saying if it's completely inadvertent, it still constitutes a seizure? No, because in that circumstance, they are shooting at the car with the intent to restrain the driver. I think that would be akin to the barricade erected in Brouwer, which this court held seized the driver there because he was seized by the instrumentality put in place or set in motion by the police in order to affect the seizure. Thank you, counsel. Justice Thomas? Hi. Thank you, Chief Justice. Yes, Ms. Cochran, are there any cases at common law where there was a distinction between touching with an inanimate object or a projectile as opposed to actual corporal touching or touching, laying of hands, as the Chief Justice mentioned? Yes. There was one case from 1604, the Countess of Rutland, where the Sergeant of Arms effectuated the seizure by touching the Countess with the edge of the mace and declaring her his prisoner. But more generally, because during the founding era, the arrests were primarily effectuated by civil citizens who were not armed, it was far rarer for them to have any sort of weapon or mechanism for applying physical force in that way. Were those actual criminal prosecutions? So the Countess of Rutland case was a civil case. Most of the cases we cite are civil arrest cases because criminal arrests were rare at the founding. There was no police force in the United States until the 1840s, and criminal opinions were even rarer. We do cite one, State v. Townsend, and there are a few others from the antebellum era. But most of the cases from the founding era are civil arrest cases. This court recognized in Peyton whether an arrest occurred at common law typically arose in the context of civil damages suits for false arrest or trespass on the body, similar to what we have here. If someone is hit with a projectile and does not stop, let's say a rock, a snowball, a stone, would that be an arrest or seizure under your analysis or your approach? Yes. I think under the standard that the court articulated in Brouwer, it would be because the seizure is affected by the instrumentality put in place or set in motion to affect the seizure. So that would be akin to the Maybe this is just repetitious. Thank you. Good morning. But would you repeat or would you state your view on attempted seizures? It says the right for people to be secure against unreasonable seizures and searches shall not be violated. Well, does that include any right to be free of attempted seizures that are unreasonable? No, because the founders didn't incorporate the common law of attempted seizures into the Constitution. So it's only the terms that the founders used in the Fourth Amendment that are incorporated into it and must be applied according to their original meaning. Thank you. That's fine. Justice Alito? If a military sniper shoots someone from a distance of 1,000 yards, would we say that the sniper had seized that person? Yes, because the sniper shot the bullet with the intent of applying physical force to the person in order to restrain them. In ordinary speech, would we say that the sniper seized that person? I think I agree with Hidari-G's point that yes, ordinary meaning It's a simple question. In ordinary speech, would we say that? We would say the sniper seized the person. I'll give you another example. If a baseball pitcher intentionally beams the batter, would we say, wow, that pitcher just seized the batter? I don't know that we would use it in that context, but I would point to Hidari-G's example. She seized the purse snatcher, but he broke out of her grip. The person seized the purse snatcher because the person had a grip on the purse snatcher for at least a moment. It's really hard for me to see how your argument squares with the language of the Fourth Amendment, which prohibits unreasonable seizures. Let me move on very quickly to another point. Do you have any cases that hold that at common law, shooting someone constituted an arrest? No, there were no shooting cases at the founding because arrests were not effectuated with guns at that point. Your argument is not consistent with the language of the Fourth Amendment, and you want us to expand the concept of an arrest beyond where it stood at common law. Is that correct? No, Your Honor. We are asking the court to affirm the original meaning of the Fourth Amendment. I think that's important because we started by talking about what the word means today, but of course for the purposes of interpreting constitutional text, we look to the ordinary meaning to the founding generation. I thought your argument was that an arrest at common law constitutes a seizure, but you have no authority for the proposition that shooting somebody was an arrest at common law. The court recognized in Castleman that common law concept of force includes its indirect application to the extent that pulling a trigger would be considered an indirect application, but we look to the common law to determine what force was at the time. I don't think there's any real dispute that shooting someone or hitting them with a bat or any sort of application of force using an instrument would have qualified under that original meaning of seizure. Thank you. Justice Sotomayor? Counsel, picking up on that last point, it is a little odd to say that a police officer who touches you has seized you in the common law, but if he has a baton in his hand and touches you with the baton, he's done so indirectly so he hasn't seized you, and if he takes a gun and shoots the bullet at you, that's not a seizure because it's a projectile. I'm assuming what your statement was to my two prior colleagues is that the common law didn't draw that kind of distinction because it made no sense, correct? That's correct. Every circumstance you just described would have fallen within the original meaning of seizure at the founding. Now, can you explain why this case is so important? Meaning, if you weren't to have a Fourth Amendment violation, would the Due Process Clause provide you with a remedy? So, I don't think that the remedy provided by the Due Process Clause is adequate here, at least under the current regime where we have the conscience-shocking standard. There are all sorts of abuses by the government of power that would fall short of the conscience-shocking standard, even though they would be unreasonable uses of excessive force. Thank you, counsel. Justice Kagan? Ms. Corcoran, there are quite a number of statements in Hodari D that support your position, but Mr. Sandridge says that they're all dicta and that we are not bound to take account of them. I was just wondering what your response to that was. Certainly, the court's holding in Hodari D that the common law of arrest defines a Fourth Amendment seizure is binding precedent. That was the foundation of the court's finding of no seizure in that case. And the court's discussion of what the common law of arrest held, which was that touch intended to restrain is a seizure regardless of whether there's transmission. I don't know that I would say it's binding in the sense that it was necessary to the court's outcome, but the court thoroughly considered the question presented here. Those were not generalized stray statements made in a different context. The court was considering this question, and all nine justices agreed that the circumstances we have here would amount to a common law arrest, and that's a Fourth Amendment seizure. And if you read the common law cases, do you get any sense of why it was that those cases said that mere touch was enough? I mean, is there a rationale that accompanies that rule? The founding generation recognized that the infliction of physical force on the body is itself an intrusion, regardless of whether the person is able to walk away. This court recognized in an 1891 case, Union Pacific v. Botsford, that the touch of a stranger without lawful authority is itself an indignity, a trespass, and assault. And so that was the concept at the founding that the framers gave constitutional weight in the Fourth Amendment. Thank you, Ms. Corcoran. Justice Gorsuch? Counsel, as I understand it, your client would have had a good common law claim in New Mexico, but for the statute of limitations running. Is that right? There was no... That's my understanding as well. I can confirm. Okay, thank you. Thank you. That's fine. With respect to HUD-RID, do you agree that the language you're relying on was not necessary to the decision? I... The second part, that the common law of arrest does not require submission, was not necessary to the conclusion. However, the first part, which is that the common law of arrest defines a Fourth Amendment seizure, was necessary, and therefore is binding. Well, let's explore that. The common law of arrest, the laying on of hands, near as I can tell, it kind of arose in the Dickensian debt collector process, that if you could get a hand on somebody through the window of the house, that then enabled you to go in and grab them inside the house. What's incorrect about that, and why should we, in defining the word seizure, rely on debt collection practices and defining the term arrest in England? So, as the court observed in Payton, at common law, disputes over whether arrests occurred typically arose in civil damages actions for trespass or false arrests, and that supports our position. But they were usually in debt collection processes, isn't that correct? There were, yes, a number of them are debt collector cases, although... Back then, guns were not unknown at that time, and it's pretty hard to find a case in which somebody's shot, and that's been held to be even an arrest, let alone a seizure, isn't that right? Yeah, that... Yes, Your Honor, that's correct, because most arrests were effectuated by private citizens. Okay, and then going back to the Chief Justice's example, if a huge roadblock were put before an individual, and everybody shoots at him, but nobody hits him, but his window's open, and he gets scraped going by, I mean, they meant to stop him with a roadblock, and he gets scraped, so it's intentionally applied, that's a seizure under your theory, right? I think so, if I followed the hypothetical correctly, in the sense that the shooting the bullet was intended to hit him... Well, the bullet didn't hit him, there were bazookas going off, there's all sorts of massive show of force, but he doesn't stop, he keeps going, he's blasting through at 100 miles an hour, and he blasts through, and on he goes, bazookas firing everywhere, still not seized by any of that, because that's just show of force, but he gets scraped through the window as he goes by, by the roadblock, and that was intentionally applied force, for sure, that's a seizure in your book, even though it wouldn't be seizure for show of force purposes, right? So, no, I don't think that scenario would, I understand now, apologies, I misunderstood initially, there, the scraping, I think, is not caused by the means intentionally applied to restraining... Let's say it is, let's say it is intentionally applied force, because they have a roadblock, and they want the roadblock to stop him, and it scrapes him. So, yes, under this court's articulation of the intent requirement in Brouwer, but I just want to emphasize that the intent requirement... So, just to be clear, that is not a show of force seizure under Haudari D, and it's holding, but it is under your theory. No, our theory is the exact same as Haudari D. Thank you, thank you, counsel. Justice Kavanaugh. Thank you, and good morning, Ms. Corcoran. With respect to Brouwer, the other side, as you know, relies heavily on the language in that, which says that a Fourth Amendment seizure occurs only when there is a governmental termination of freedom of movement through means intentionally applied. What would you suggest we do with that language? So, I would turn to what the court said in Armour and Company v. Wantock, which is that the words of our opinion must be read in light of the facts under discussion. And the entire focus of Brouwer, and in particular that sentence, is on the intent requirement. Did the officers who erected the barricade intend to restrain the driver for the purposes of a seizure? The driver there was killed on impact, so the termination of movement was besides the point in that case. And then I think a few of the questions so far have tried to illustrate a potential distinction between how we normally use the word seizure in ordinary speech and how it's been used historically versus maybe the legal common law use that you've described. Is that accurate? How should we deal with that distinction between ordinary usage and why shouldn't we just follow the ordinary usage of the term seizure? I would look to Hidarigi's discussion of this, which explains that to the extent the ordinary meaning of seizure at the time of the founding was more expansive than how we normally think about seizures today, it's the ordinary meaning at the time of the founding that controls, especially if the modern understanding risks diminishing the constitutional right. This court has repeatedly recognized that the Constitution must at minimum protect today what it protected at the time it was adopted. Thank you. Ms. Tableson? I'm sorry. Ms. Corcoran, you can take a minute to wrap up if you'd like. Thank you, Your Honor. I've said a lot today about the importance of preserving the Fourth Amendment's original protections, but our position also makes sense doctrinally and practically. This court has long recognized that at its core, the Fourth Amendment protects against unreasonable government intrusion with personal security, including invasive physical touch. We see that in Terry v. Ohio, Marilyn v. King, and Winston v. Lee, among others. It's a principle that flows from the Fourth Amendment's express protection of the person, that is the body, and it's violated the moment a police officer applies physical force to a person's body, regardless of whether they're able to walk away. Thank you, counsel. Ms. Tableson? Mr. Chief Justice, and may it please the court, in California against Todaridi, this court explained that a person is seized within the meaning of the Fourth Amendment when the police intentionally apply restraining physical force to his body. If a subject does not stop, the seizure lasts only a moment, the moment of physical impact, and may have limited implications. Like any seizure, though, it must be reasonable. For nearly 30 years, Todaridi has provided a clear and administrable rule to determine when physical contact between an officer and a citizen implicates the Fourth Amendment. This case requires the court only to reaffirm that rule. The facts of this case make it an easy one under Todaridi. It is undisputed that officers shot Ms. Torres as part of an effort to stop her and to stop her vehicle. She was therefore seized. But she did not stop, and so the seizure was momentary. Whether that seizure was constitutional and whether respondents may be civilly liable in this case are questions that should be answered on remand under the Fourth Amendment. This court should therefore vacate the decision below. Counsel, I wondered if there was some tension between your position and Ms. Corcoran's. Several times in your brief, you talk about that the touch can be too light to qualify as a seizure. I'm looking at, for example, page 13, where you say, you know, tapping somebody on the shoulder and asking for immigration paperwork would not constitute a seizure and that the contact must be designed to restrain movement. Is there any distinction between your view of that and Ms. Corcoran's? Mr. Chief Justice, I'm not sure there's a distinction between our position and petitioners. I'm not sure petitioners take an explicit position on those fleeting, non-restraining physical touches, but we do think that an important restriction on the test and restriction that is reflected in HODAR-ED is that the physical touch must reflect an effort to restrain movement. That is consistent with this court's decision in INS against Delgado, which, as you referenced, involves the shoulder tap. HODAR-ED includes that restriction in defining a seizure, and the common law sources cited in HODAR-ED are consistent with that restriction. So if there's a tap on the shoulder and the officer says, I don't mean to hold you up, you're free to go, but, you know, I want to talk to you about this, does that qualify as a seizure? No, Your Honor. Okay, thank you, Counsel. Justice Thomas? Counsel, I'm a bit confused. HODAR-ED did not hold that there was a seizure, did it? On the facts of the HODAR-ED case, no, there was no seizure. So this was an individual who had thrown drugs away and then was later tackled, right? Correct, Your Honor. So I don't see how on those facts some of the language in HODAR-ED can do as much work as you seem to be requiring it to do. Oh, Justice Thomas, the question in HODAR-ED was whether HODAR-ED, as a child, had to be seized at the moment that he discarded his drugs, which was before he was tackled. There was no dispute that he was seized in the tackling, but because at the moment he discarded his drugs, no police officer had touched him in any way, the court determined that he was not seized at that time. But the seizure after the tackling and the submission or the control was the only seizure there. So I don't know. You seem to be using your definition or at least the explanation in HODAR-ED for what constituted the seizure when there was a finding that there was no seizure there as a basis for your argument. Anyway, let me move on to your case law. Can you think of a single case at common law where there was a touching by an inanimate object, for example, a projectile, that did not result in the submission that constituted a seizure? I don't have a case precisely like that, Justice Thomas. I think my friend mentioned the Countess touching, but in that case, the Countess who was the arrestee did submit to the arrest and she didn't flee. That being said, the language in Countless of Rutland's case indicates that the touching through the mace alone was what affected the arrest. Thank you. Justice Breyer? No, go ahead. Thank you very much. Justice Alito, maybe you can clarify something for me about your position. Let's say that the petitioner in this case had been struck by one bullet. For what period of time would she have been seized in your view? Justice Alito, she would have been seized at the moment of impact of the bullet and that is all. And that's it. Okay. So this is what really confuses me about your position. At the bottom of page 18 of your brief, you say that any damages claimed in a civil suit would be limited to harms traceable to the brief moment of the seizure. I would have thought that the damages in a case like this, if this is a valid claim, would constitute the effects of having been shot. Medical expenses, pain and suffering, lost income, and all that sort of thing. Could you explain what you meant by that statement? Of course, Justice Alito. What we meant to say was that in many cases, the fleeting physical force seizure will be something that's far less than a bullet. And so, for example, if an officer grasped at subject's arm and the subject wriggled out of the grasp, that is a seizure under the Fourth Amendment, but it's not the type of seizure that could sustain meaningful damages under Section 1983. Of course, in this case, the seizure is not that. The seizure was a bullet to Ms. Torres' body. And so, we do think that, you know, that is the moment of seizure that should be analyzed to pull it for the purposes of damages under 1983 in this case. Well, I still don't understand what that means in concrete terms. Certainly, her injury is traceable to having been shot. Is it traceable to the brief moment of the seizure, which is what you say in your brief? We think the brief moment of seizure is the bullet entering Ms. Torres' body. So, I think they are one and the same for the purpose of… Can she get damages for, let's say, pain and suffering? Yes or no? Yes, Your Honor, assuming that the tort principles that govern under Section 1983 would provide for such damages. Justice Sotomayor? Counsel, you rely, as does your friend, on Hodari-D. Both of you believe, I think, and if I'm wrong, let me know, that the language in Hodari is not dicta. Could you articulate why you think it's not dicta? Justice Sotomayor, the facts of Hodari-D did not involve a physical force seizure at the moment in question in that case. So, I suppose you could imagine the court in Hodari-D having resolved the question presented there on different reasoning, but that is not what the Hodari-D court did. Instead, the court expressly framed the question presented as whether, with respect to a show of authority, as with respect to application of physical force, a seizure occurs even though the subject does not yield. The court then has a long discussion of physical force seizure and specifically concludes that the application of restraining physical force, even if unsuccessful, can be a seizure. That language has never been abrogated, and that particular point was agreed to by the defense. So, we take the Hodari-D court at its word, and Hodari-D did establish a clear and administrable line that has been in place for 30 years. So, we are not asking the court to revisit that language in Hodari-D today. It seems somewhat logical. It was necessary to the reasoning of the court in reaching its decision. We certainly don't think it's language that we could simply set aside. Of course, we advocated for a different position in Hodari-D. This court rejected it, and so we are here respecting, you know, the court's press in Hodari-D. Thank you, counsel. Justice Kagan? Ms. Tableson, I wanted to ask you about exactly that question, that you just said at the end, because your office did take a different view in Hodari-D. This question was viewed as important to the resolution of the case there, and the office said, and I'm quoting here, at common law, the concept that someone could be in flight and yet also be seized would have been unfathomable. So, this is not a criticism of a change of position. I just want to understand what accounts for the change of position in this case. Yes, Your Honor. If you read our brief in Hodari-D, and then you read the decision in Hodari-D, it's quite clear that this court considered and rejected the government's position, both the bottom line and the reasoning and the inferences that we drew from the common law. So, we didn't certainly feel comfortable simply, you know, running it back. It's also true that, as I sort of alluded to before, for the last 30 years, Hodari-D has provided a clear and administrable standard to determine when these interactions between a police officer and a citizen rise to the level of the Fourth Amendment, and the United States' interest here is in establishing a clear and predictable rule that law enforcement can apply in the heat of the moment in the field, and we think the rule established in Hodari-D achieves those ends. And Ms. Tableson, along the lines of one of the Chief Justice's questions, I mean, is there anything that Petitioner's Counsel said in her argument, or for that matter, in her brief, with which you, the government disagrees? Uh, no, Your Honor. The one thing I would say is that Petitioner's brief does not express position on how to analyze the intent required for a fleeting physical court seizure, and we have tried to emphasize that that's an objective inquiry under this court's cases. So, that's a, I wouldn't say disagreement, but rather a slight difference between Petitioner's position and ours. Thank you, Ms. Tableson. Justice Gorsuch? Counsel, in terms of clear administrable lines, the Fourth Amendment, as interpreted by this court, the seizures of papers require actual control, affects actual control, show force under Hodari-D actual control. Here alone, this is an anomaly, isn't it? Yes, Your Honor, and I think that's one of the arguments we made in our briefs in Hodari-D. That being said, you know, in the show of authority... If that's the case, I guess I'm curious, what authority do you have in terms of the original and ordinary meaning of the word seizure at the time of the Fourth Amendment would countenance that difference? And how, I guess you're going to tell me that that incorporates arrest doctrine, but how do we know that? And what authority do we have for that? The founders were well aware of the word seizure and well aware of the word arrest, and they deliberately did not use arrest, it seems. Why should we incorporate Dickensian debt collection practices, which were enabled by a very liberal view of arrest to allow somebody to reach through a window, grab somebody? Why should we incorporate those practices into the term seizure? This court has recognized again and again that an arrest is the quintessential seizure of the person. That's in Peyton, as well as Hodari-D. And this court has also consistently looked to common law cases to help inform the meaning of the Fourth Amendment, including civil cases. Antic against Carrington, of course, which is one of the hallmark common law cases the court has looked to in defining the Fourth Amendment was a civil trespass case. We do agree that the common law rule arose in a different context from the one that we're talking about here. But what the common law and the Fourth Amendment have in common- Okay, if we're going to do the common law of arrest, I thought I heard you disagree with your friend earlier. And that it's pretty hard to find a case involving a projectile that constitutes an arrest, even under the very liberal Dickensian type debt collection practices cases. That's true, Your Honor. There's not a gun shooting or a projectile flying through the air case that I'm aware of. But- It's not like guns were unknown at the time, right? I think my friend, I agree with my friend that guns were not regularly used in the course of an arrest at the time. They were not known. Justice Kavanaugh. Thank you, Chief Justice. And good morning, Ms. Tableson. On your brief in Hodari-D, the Solicitor General's brief said that the historical evidence defined the term seizure as requiring actual control over the person or thing seized. And the brief said, as a matter of original understanding, one could not be arrested or seized until he was in the physical custody of the seizer and within his control. The court in Hodari-D, as you point out, did not adopt that position. But was the court wrong about the original understanding? In other words, who's correct about the original understanding, the Solicitor General's brief or Justice Scalia's opinion for the court? Well, Your Honor, our brief in Hodari-D, to support that rule, cited many common law sources involving the seizures of goods, such as ships, in which the seizure was consummated with control over the item. And what Hodari-D said was that that is not quite the right source of law to look to in analyzing the seizure of a person, which is the arrest. And it's true that even in our Hodari-D brief, we cited some sources indicating that an arrest could be complete at the point of near touching. So at this point, we take Justice Scalia's Hodari-D at its word and we're not asking the court to revisit the original meaning of the seizure under the Fourth Amendment. I just want to make sure, are you saying Justice Scalia was, it's not only precedent, but Justice Scalia was right? Or are you not saying that? I'm saying, I think Justice Scalia drew a distinction between the common law sources that is accurate and that you could even Thank you. A minute to wrap up, Ms. Tableson. Thank you, Mr. Chief Justice. Under this court's precedent, the intentional application of restraining physical force to a subject's body, even when that force is unsuccessful, is a seizure. And the seizure lasts for as long as the physical force is being applied. There is simply no other way to read Hodari-D. This court has never called decided a case whose results goes the other way. This court has also repeatedly emphasized that the Fourth Amendment analysis is an objective one. The Hodari-D test focuses not on an officer's mental state, but rather on how a reasonable person would have understood his conduct. Under that test, Ms. Torres was seized, albeit briefly. So the Fourth Amendment applies. But as in any case, the fact that a seizure occurred is the beginning and not the end of the Fourth Amendment inquiry. This court should vacate and remand so that the courts below may apply the reasonableness standard and analyze qualified immunity. Thank you. Thank you, counsel. Mr. Standridge. Mr. Chief Justice, and may it please the court. A seizure under the Fourth Amendment occurs when a police officer requires physical possession, custody, or control over a suspect. From the time of the founding to the present, and as a matter of common sense, the acquisition of physical control over a person has been necessary to effectuate a seizure. Whatever the means employed by the police, the endpoint is the same. The police action must result in the officer's acquisition of custody over the person, terminating the person's movement. In other words, the suspect must be stopped by the very instrumentality set in motion or put in place by the police officer. Petitioner Roxanne Torres was not seized by either Janice Madrid or Richard Williamson on July 15, 2014. While these officers shot at and hit Petitioner, they did not acquire physical custody or control over her. Petitioner did not stop or even slow down in response to being shot. Instead, she fled the city, sped 75 miles west of Albuquerque, New Mexico, and eluded arrest for over a full day. The fundamental flaw in Petitioner's argument here is that at no time did the officers acquire possession, custody, or control over her. Indeed, Petitioner never stopped in response to the police action. As the officers did not seize Petitioner, they cannot be held liable to her excessive force in violation of the Fourth Amendment. The 10th Circuit correctly held as much below, and its decision must be affirmed. Mr. Chief Justice, I look forward to the court's questions. Okay. Mr. Standridge, I'd like to follow up with some of the questions that Justice and all that that nonetheless are held to constitute an arrest. Is that the same? Is there any reason we shouldn't translate those into a police affecting a seizure? Absolutely, Mr. Chief Justice. We should not translate that body of case law cited by the Petitioner regarding the mere touch rule because it arose in a very limited and narrow context. As the court has pointed out repeatedly today, it arose in the context of Dickensian debt collection practices existing in the late 18th century. The constabulary and the bailiffs of the late 18th century are far different from our modern police force of today. In fact, as Petitioner pointed out, we didn't have public modern police forces until the mid-19th century. I thought our cases made clear that the Fourth Amendment was designed to protect at least the level of bodily integrity, personal security that was secured at common law. Our cases certainly look to common law precedence about arrest even if by Dickens or anybody else. What authority do you have for that distinction? Your Honor, I'd say first to Payton v. New York, this court's opinion that the court noted that the common law rules of arrest developed in legal contexts that substantially differ from the cases that the court sees before it today, that these important differences between the common law rules that existed relating to arrest at the time of the framing and those that have evolved through the process of interpreting the Fourth Amendment in light of contemporary norms and contemporary conditions require that we depart, that we reject historic relics that are not suited to the modern era. The part-time constabulary that was in charge of ferrying out debtors and bringing them back before the court, that's simply different from what we expect of police officers working today. Our public dedicated police force is there to arrest or to investigate and make arrests for whatever reason. Your Honor, Ms. Torres drove on and wasn't actually apprehended, I guess, for a day. But what if she hadn't been able to continue on or what if she was able to drive on only for a couple hundred yards? Would your conclusion be any different? I would say that if Ms. Torres stopped within a reasonable distance, within maybe 50 feet or a half a block from the scene of the shooting, allowing a reasonable police officer, allowing a reasonable amount of time for the police to go and acquire control over her as a result of them shooting her and stopping her, then yes, that certainly would constitute a seizure. But viewing it this set of facts from an objective standpoint, no reasonable person, no ordinary person, as a matter of common sense, can say that a person who is shot by the police but continues to drive well out of range, well out of their sight, and arrests them for a full day could be seized as a matter of the Fourth Amendment. Thank you, counsel. Justice Thomas? Thank you, Mr. Chief Justice. Mr. Sandridge, I'd like you to, on HRDA, I'd like you to give us your reasons for why some of that language that seems to dispose of this case in HODARI-D is dicta. Absolutely, Justice Thomas. The simple fact of the matter is that HODARI-D did not involve a use of force, as did Brow v. County of Indio in the present case. This court was not called upon. The fact that HODARI-D did not involve a claim that police officers in pursuing young Mr. HODARI-D touched him or got a hold of him at any point before he discarded the drug. As the court pointed out, Mr. HODARI-D was not seized until he was tackled. It becomes a binary question. You are either seized and in control of the police or you are not. So the discussion about what may have occurred at common law, the possible sexual permutations of when someone may have been arrested at common law, shows the outer bounds of what an arrest can be. Because that discussion was divorced from the facts of the HODARI-D case, it is dicta and it is not binding on this court. The ultimate holding of HODARI-D supports the Tenth Circuit's reasoning below. Are you familiar with any of the cases that have followed the reasoning that Petitioner points to in HODARI-D? In terms of the circuits that have since looked at that bit of common law and the circuits that were few and far between, were we mistaken in applying that discussion as the actual holding of HODARI-D? When I asked Ms. Corcoran about someone being arrested merely by the touching of an inanimate object, I think she referred to, and I don't want to mischaracterize what she said, but I think she referred to the Countess Isabella Rutland case in 1605. Are you familiar with that case? I am. Could you tell us what your take is as to whether or not that constitutes precedent for the mere touching with an inanimate object being the equivalent of an arrest? I would say with respect to that case, Justice Thomas, that it too is divorced from the facts of this case. In fact, I think as the government just conceded in the Countess case, the officer or the bailiff did touch the person with the end of the inanimate object, but that second step, the step of control, occurred when the person submitted it to the authority. That's not true in this case. You're saying that the Countess was compelled to actually be taken to the compter and basically the equivalent of jail, so that would be the seizure. I tend to have read it that way too. Are there any cases that you've seen where the mere touch has been applied to outside of the criminal context or any of the cases that dealt with the criminal context at common law? I have not, Your Honor. Thank you. Justice Pryor? Suppose that a policeman without a warrant wants to search a private person's house, enters in the middle of the night, before he can do anything. He doesn't look for a single thing. No chance to look for or search for anything a big dog drives him out. Is that a search? No, Your Honor. I submit that it is not because the officer that has entered into the home has not obtained information, and that's the hallmark of an invasive or unreasonable search of a person. A police officer intending to search, breaking into somebody's house, has not committed a search unless he has a chance to look around. And to say something similar here, that that doesn't seem to me to make the right of the people to be secure in their persons or houses from unreasonable searches and seizures much protection. Whole area, no protection at all. What I would say to that, Justice Pryor, is that the seizure clause of the Fourth Amendment and the search clause of the Fourth Amendment do protect different interests. The seizure clause protects against unreasonable termination of a person's freedom of movement. It protects, it secures the right of the people to be secure in their persons, in their ability, in their liberty to move. The search clause is somewhat more broad. It protects against the idea that the government can enter into a house with a general warrant, search for whatever information it wants. It's not a search because the big dog scared them off. Big harm. I mean, pretty bad harm. It is your, and it may be actionable under some other provision of law. Any authority? Any authority that if you don't actually look around because you're scared off first, it's not a search? I don't have that specific authority. I would be surprised. I would be surprised too, but just given my understanding of the difference between the seizure clause and the search clause, my understanding of this court's case law is that searches occur when the officer- Because I'm trying to make a point. My point is you could read this, Fourth Amendment, as applying to attempt because the same harm is there and it's attempted search, attempted seizure. But we haven't read it that way. And therefore, we need a line that's somewhat bigger than the proposed. And Hodari and the others are in efforts to draw that line and it's as good a line as any. All right. Your response? I disagree with that, Your Honor. I think Hodari did draw the distinction between attempted seizures and actual seizures. And I think Brower set forth the hallmarks of what an actual seizure by physical force is. It's a stoppage of movement. It's termination of freedom. It is a taking possession. It's physical control. That is an easily administrable rule for police officers working in the field. And it's also easily understood by the common person. It comports with common sense and common understanding through 200 years of dictionary definitions and case law on the ordinary notion of seizure. Thank you. Justice Alito? Well, picking up on the ordinary notion of seizure, suppose a police officer is attempting to arrest someone, grabs that person's shirt and holds onto the shirt for a couple of seconds, and then the person breaks free, flees and disappears. Has that person been seized? That person has been seized, Justice Alito, for the matter of seconds under which they were under the control of the officer. If the officer, in grabbing the person's shirt, held the person in place for a non-zero amount of time, for a few seconds, at that point it is a seizure. Again, it's a binary question. You are under the control of the police officer or you are not. Once the person breaks free of the officer's grasp and runs away, the person has broken that seizure that might have existed for a few seconds. So a seizure does not require the submission to the law enforcement officer. And it doesn't require that a person be permanently taken into custody. It simply requires that the person who is doing the seizing have control of that person for some period of time. Is that your understanding? That is my understanding, Your Honor, that the officer acting with the intent to bring the person under their control actually then acquires that control. Those are the two necessary elements of a seizure. You presumably, well you certainly know more about New Mexico law than I do. Is there any reason why this could not have been brought as a battery claim under New Mexico law? There's absolutely no reason, Your Honor. For reasons that are not clear in the record, this particular plaintiff filed her lawsuit directly in federal court after the period the statute of limitations had expired for state law claims under our sovereign immunity statute. She did file in time, within the three-year limitations period we allow for Section 1983 claims. But a more prudent course of action would have been to file not only the federal claim, but to also file a pendent claim for assault and or battery under New Mexico law. As far as I can tell, there was no impediment here that would have would have precluded that. Would the officers have had defenses under New Mexico law that are more generous than those that would be available under 1983? I don't believe so, Your Honor. We do have a good faith defense that comes from New Mexico Supreme Court case law. However, New Mexico Supreme Court case law also counsels trial judges against granting summary judgment. We are a very summary judgment adverse state that we have to represent as an officer of this court and the state courts of New Mexico that it is likely an assault or battery claim brought by a petitioner such a plaintiff such as this petitioner with a survived summary judgment would likely have to have been resolved at trial. Thank you. Justice Sotomayor? Counsel, there is an element to the Fourth Amendment that all of our faith leaders, including Hidari, recognized by Justice Scalia, who very much was a advocate of the common law and quite well informed about it generally, that has to do with the Fourth Amendment's bodily integrity. It is why we call putting a needle in someone's arm a seizure that requires either probable cause or exigent circumstances, etc. And all of the common law cases that the other side has quoted to talk about not the seizure of the person in stopping their motion, but the seizure of the person with respect to the touching of that person, because even a touch stops you. It may be for a split second, but it impedes your movement and offends your integrity. You want us to add something more to the word seizure, you say, because common sense says that when a person is held for some imperceptible period of time, a few seconds, more than a few seconds, I don't know what your answer to Justice Alito meant, that that is more of a seizure than putting a bullet in someone. Am I understanding your argument accurately? I think Justice Sotomayor, I disagree. I don't believe we're asking the courts today to add anything, to add any extra layer of analysis to the seizure issue beyond what is already existent in this court's case law and in the common law. Excuse me, counsel. No, you're asking us to reject the clear line drawn by Hidari and say that Justice Scalia was wrong about what the common law showed. That's exactly what you're asking us to do. You're saying it was pure dicta. His entire analytical approach was wrong. I don't know, Your Honor, that we're suggesting that Justice Scalia was incorrect in his discussion of a particular facet of common law, that working in the outer boundaries of the common law of arrest that was this idea that a person could be arrested, as a matter of constructive arrest, by the mere touch. Well, let's put it, the Fourth Amendment doesn't talk about arrest. It talks about seizure. A seizure is a form of arrest. Whether you stay arrested or not, just as in your example of the person pulling away and running away, you can still be seized, you can still be arrested and then run away. Yes, I believe that is correct, Justice Sotomayor. Every custodial arrest, every traditional arrest is a seizure, but not every form of arrest would constitute a seizure, absent that element of control, absent that element of the officer taking possession over the person, which is not a feature of constructive arrest. But that idea of control, as opposed to intrusion, laying your hand on someone, that was all the common law talked about, wasn't it? You try to distinguish away those cases, but that's all they reference. Respectfully noted, Your Honor, I would point to the English decision in Genner v. Sparks, for example, where the court made the distinction between the arrest by the touch, allowing the bailiff to break into the house to actually seize the debtor who was in the house. I would also certainly point to contemporary dictionary definitions existing at the time. For example, Johnson's Dictionary of the English Language that said to seize is to take possession of, or to grasp. Grasp. Counsel, grasp. Counsel, thank you. My time is up. Thank you, Your Honor. Justice Kagan. Mr. Sandridge, when Hodari D. said, and I'm quoting now, an arrest is affected by the slightest application of physical force, despite the arrestee's escape. That's what you're saying, is that correct? Yes, Your Honor. And when Hodari D. said, I'm going to try your patience a little bit, I'm sorry. When Hodari D. said, to constitute an arrest, however, the quintessential seizure of the person under our Fourth Amendment jurisprudence, the mere grasping or application of physical force with lawful authority, whether or not it succeeded in subduing the arrestee, was sufficient. That's what Hodari D. said. So, yes. And when Hodari D. says, the word seizure readily bears the meaning of a laying on of hands or application of physical force to restrain movement, even when it's ultimately unsuccessful, that would be diphther? I believe it would. Justice, yes or no? Yes, Your Honor. Yes. I'll stop, but it's not because I couldn't go on. Hodari D. says this, I count six times, either in its own language or quoting somebody else. And that's kind of amazing, but it's only a seven page opinion. So, this is just like all over the opinion. It's the way that Justice Scalia reached his conclusion as to that case. So, how could it be that that is not binding on us? Because, Your Honor, it stands in contrast to the ultimate holding of Hodari D. where Justice Scalia noted that in order to seize a person or in order to effectuate a seizure from the time of the founding to the present, the object of the seizure must be taken possession of. I guess what I... I'm sorry, Mr. Standridge. I didn't mean to interrupt. No, that's fine, Your Honor. I guess what strikes me is that you're using an impoverished understanding of what precedent is as opposed to what diphther is. I mean, these are not what we sometimes call stray statements, things that we said without thinking about them, things that we said without sort of realizing the consequences. These statements have a kind of self-consciousness and a kind of clarity that one, you know, seldom sees in a judicial opinion. And it's clearly the way Justice Scalia thought he was coming to this conclusion. And the conclusion, you're right, it's not a forced case. But essentially he's saying, well, look, you either need force or you need submission. And he's going through the common law to suggest why those requirements were not met. So I guess I'll just ask you again. I mean, if anything other than an ultimate holding is not dicta, this is not dicta, isn't it? If anything other than an ultimate— You know, if dicta extends to anything beyond—excuse me, if non—unless dicta is everything except the ultimate holding, this is not dicta. No, I disagree, Your Honor. I think that any discussion that is more than the fact of the case that leads to the ultimate holding would not be dicta. And that was the discussion in Jodari-D that attempted seizures are beyond the scope of the Fourth Amendment and that seizures require the taking of possession. And in fact, in looking at Jodari-D, I noted that Justice Scalia cited to the case of the Josefa Segunda in 1825, where a revenue inspector had attempted to seize a ship. And this court said he hadn't done so in part because he did not use force sufficient to compel the submission of the crew and captain of that ship. Thank you, Mr. Sandridge. Justice Gorsuch? Thank you. Counsel, your colleagues on the other side suggest that your rule will lead to that. I respectfully disagree, Your Honor, as you might imagine. Our rule has a definite and logical endpoint. An officer in the field will know whether or not he or she has seized a suspect because they'll know whether that person has been brought under their possession, custody, or control. An officer in the field may then contemplate that if they use some level of force and the person that is the subject of that force is not brought under their control or is not stopped, a reasonable officer under the County of Sacramento v. Lewis could again also assume that the fleeing person may come back with a Fourteenth Amendment claim for violation of the Substantive Due Process Clause. In terms of asking police officers working in the field to understand whether or not they have seized a person for the purposes of the Fourth Amendment, this is the easily administrable rule that this court tends to look for. Okay, and as I think you just noted, and I just want to make sure I understand you agree, not only would there be a battery claim under state law, there could potentially be a Fourteenth Amendment excessive force kind of claim as well. That is precisely correct, Your Honor. It becomes something of a flow chart. A given plaintiff who believes that they have been the subject of physically abusive governmental conduct or excessive police force can plead their facts in their complaint. Then they claim in count one that this constitutes a seizure, it constitutes an unreasonable, unreasonable seizure, and that's violating my Fourth Amendment rights. In the alternative, if this was not a seizure, it is still physically abusive governmental conduct that shocks the conscience of the court, yes, the defendants are liable under the Fourteenth Amendment to say nothing of pendant state law battery claims or assault claims. It's a bit of a tradeoff. In the Fourth Amendment context, the plaintiff has to overcome that initial hurdle, that threshold issue of showing the seizure, whereas under the Fourteenth Amendment, they would not, but then they still have to show that the conduct falls within the culpability spectrum identified by this court in Sacramento v. Lewis. Is it your view that the common law of arrest is wholly irrelevant when we're interpreting the term seizure under the Fourth Amendment, or does it have some role to play? It absolutely does have a role to play, Your Honor. We look at the common law of arrest as it existed at the time to see if it gives us a clear picture as to what the common sense, common understanding of the term seizure was. Where it does not, then this court looks inward, it looks to how it has traditionally analyzed these terms or defined these terms in light of contemporary norms. Okay. In terms of Hodari D., would anything be different about the court's holding there if the passage about arrests were excised? No, Your Honor, I don't believe it would because the holding that is more to the facts of that case would still stand. Why then? Because the idea that looking at it from an objective standpoint, whether Mr. Hodari D. was seized at the time he threw the drugs away, which was the issue there, just the analysis of those facts in light of this court's existing precedent compelled the result that the court actually reached that he was not seized. Okay. The number of lower courts, of course, held that this passage was dicta. Is there anything disrespectful about saying that some portions of a judicial opinion are essential to its holding and others may not have been fully considered, especially when there's been no adversarial testing as there wasn't in Hodari? I don't believe so. I don't believe it's a matter of disrespect. I simply would posit that it is a matter of careful judicial analysis. Justice Kavanaugh? Thank you, Chief Justice, and good morning, Mr. Standridge. With respect to Hodari, I think there are two issues. First, was Justice Scalia right in the discussion, and then second is the precedent question. On the first question, whether he was right, you're arguing, as I understand it, that Justice Scalia and really all nine justices in that case were wrong about the original meaning of the Fourth Amendment, and I'd like you to explain where you think they made the mistake. I wouldn't say that the common law discussion in Hodari D. was incorrect. It certainly stated a rule of arrest that existed in the Dickensian era, where I think the difference is, as applicable to this case, is that it was not a complete picture of the common law of arrest as it existed at the time of the ratification of the Fourth Amendment. The ordinary meaning, even then, even 200 years ago, was that an arrest, a typical arrest, resulted in the person being in custody or being taken possession of by the arresting officer. Again, I think that the Hodari court, and I believe this was recognized later in Sacramento v. Lewis, is that that particular discussion would simply explain what the Hodari case was not. I guess I'm a little confused. In your view, it was a mere touch, but a touch with intent to restrain. Is that a seizure or not? It is not, because it is missing the element of control. Even though the common law cases did, as cited by Justice Scalia, said that touching, mere touching with intent to restrain, I think you are saying it's wrong. What I'm saying is that as a broad proposition, it is wrong. The cases cited by the court in Hodari and cited and relied on by the petitioner here were, again, limited to that civil debtor context that is not corollary or is not compatible with the modern conditions of police work as we know them today. In terms of the Hodari D as a precedent, picking up, I think, on what Justice Kagan said, I read the case to say there are two ways you could have been seized, one by force with intent to restrain or one by a show of authority, but in the show of authority, you need actual submission. Those are the two avenues that the opinion outlined, as I read it, and neither was met in that case leading, as Justice Thomas said, to the bottom line holding that there was no seizure there. Is that an incorrect reading? No, Your Honor. I believe you have the reading of Hodari exactly correct. The other side makes a point, and I think Justice Breyer was getting at this. There's some symmetry with Jones, the GPS case of placing a GPS on your car, intent to search, touching your body with intent to restrain. Can you respond to that symmetrical argument that the other side makes and whether there would be any, I guess, lack of symmetry with Jones if we were to rule in your favor here? Yes, Your Honor. Because Jones was a search case that was brought under the search clause, there is an asymmetry given the different interests protected respectively by the seizure clause and the search clause. Again, the search clause is more broad. It doesn't only affect the stoppage of a person's movement or the restraint of their liberty. The search clause is aimed at any action that invades the person's privacy. That is where the asymmetry comes from, and that is why Jones is not an alias to the facts of this case. Okay. Thank you. Mr. Standridge, a minute to wrap up. Thank you, Mr. Chief Justice. I will end where I began. From the time of the founding to the present, a Fourth Amendment seizure has required possession, custody, or control. That was a matter of common sense and common understanding in 1791. It was a matter of common sense and common understanding throughout the 18th and 19th centuries and 20th centuries and on through today. At no time was Roxanne Torres ever under the order of Richard Williamson. Because she cannot meet that hurdle, she cannot meet that threshold question of showing that she was seized, she cannot bring a claim under the Fourth Amendment for violation of the right against unreasonable seizures. For those reasons, Your Honors, we request that the 10th Circuit's decision be affirmed in all respects. Thank you, Counsel. Ms. Corcoran, three minutes for rebuttal. Thank you, Your Honor. To start first with Justice Gorsuch's question about the framers' textual choice, it made sense for the framers to use the word seizure because the word arrest covers only seizures of persons, and they needed language that would also encompass seizures of property. Their use of the word seizure to cover arrests was consistent with the founding era dictionaries and case law, which treated arrests and seizures of persons synonymously. As Ms. Tableton said, we see that in Entik v. Carrington, where the court repeatedly refers to the arrest of the plaintiff as a seizure, as did the underlying warrant at issue, and that was a criminal arrest. Second, Mr. Standridge cited Payton as supporting his position, but there the common law was unsettled about the legality of a warrantless home invasion to make a felony arrest. In contrast, respondents have not cited a single founding era case where the court found that no arrest or no seizure occurred because the suspect escaped after the officer touched him. This is not an area where there's any doubt about the common law. And with respect to the lack of cases involving inanimate objects, as I said earlier, this court recognized in Castleman that the common law of force included its indirect application, and that's consistent with Brower. In drafting the Fourth Amendment, the framers chose a term, seizure of person, that was widely understood at the time to include any touch intended to restrain even when unsuccessful. That common law reflected the founding generation's belief that the infliction of physical force on the body is itself a profound intrusion on personal liberty regardless of whether it results in physical control. That is the concept that the founders gave constitutional significance in the Fourth Amendment. And to the extent we think about seizures differently today, it is the ordinary meaning at the founding that matters for the purposes of interpreting constitutional text. Contemporary shifts in language do not diminish our constitutional rights. The alternative offered by respondents is a regime that as a practical matter provides no constitutional protection from excessive force by the government so long as the victim can escape afterwards. A constitution that's unconcerned with the police shooting someone without any provocation so long as the person doesn't immediately stop moving. It's not just the foundation of the Bill of Rights, the right to be secure in our bodies from unreasonable government intrusion. The court should reaffirm what it unanimously concluded in Hadari v. 30 years ago. At the founding, the Fourth Amendment prohibited the government from attempting to restrain private citizens with unreasonable physical force regardless of submission, and it continues to provide that protection today. Thank you. Thank you, counsel. The case is submitted.